FILED
2021 DEC 14 PM 2:57
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| DAVID L., <br><br> **Plaintiff,** <br><br> v. <br><br> **KILOLO KIJAKAZI,**[1] <br> **Acting Commissioner of Social Security,** <br><br> **Defendant.** | **MEMORANDUM DECISION AND ORDER** <br><br><br> **Case No. 2:21-cv-00028-JCB** <br><br><br> **Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[2] Before the court is Plaintiff David L.'s ("Plaintiff") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[3] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary. Based upon the analysis set forth below, all of Plaintiff's arguments on appeal fail. Therefore, the court affirms the Commissioner's decision.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), she has been substituted for Commissioner Andrew M. Saul as the Defendant in this action. ECF No. 18.

[2] ECF No. 10.

[3] 42 U.S.C. §§ 401-434.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. On March 15, 2018, Plaintiff applied for DIB.[4] Plaintiff's applications were denied initially and upon reconsideration.[5] On April 15, 2020, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[6] Shortly thereafter, the ALJ issued a written decision denying Plaintiff's claims for DIB.[7] Plaintiff appealed the adverse ruling, and, on November 18, 2020, the Appeals Council denied his appeal,[8] making the ALJ's decision final for purposes of judicial review.[9] On January 15, 2021, Plaintiff filed his complaint in this case seeking review of the Commissioner's final decision.[10]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[11] The Commissioner's findings, "if supported by substantial evidence,

---

[4] ECF No. 15, Administrative Record ("AR ___") 196-204.

[5] AR 96-99, 101-03.

[6] AR 30-66.

[7] AR 9-29.

[8] AR 1-6.

[9] 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

[10] ECF No. 2.

[11] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

shall be conclusive."[12] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[13] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[14] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[15]

The aforementioned standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[16] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[17]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant

---

[12] 42 U.S.C. § 405(g).

[13] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[14] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[15] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[16] 20 C.F.R. § 404.1520(a)(4)(i)-(v); see also *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[17] 20 C.F.R. § 404.1520(a)(4); see also *Williams*, 844 F.2d at 750.

presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[18]

At step three, the claimant must show that his impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[19] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[20]

At the fourth step, the claimant must show, given his residual functional capacity ("RFC"), that his impairments prevent performance of his "past relevant work."[21] "If the claimant is able to perform his previous work, he is not disabled."[22] If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability."[23]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[24] The decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of his age,

---

[18] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

[19] 20 C.F.R. § 404.1525(a); *see also* 20 C.F.R. § 404.1520(a)(4)(iii).

[20] *Williams*, 844 F.2d at 751.

[21] 20 C.F.R. § 404.1520(a)(4)(iv).

[22] *Williams*, 844 F.2d at 751.

[23] *Id*.

[24] *Id*.

education, and work experience."[25] If the claimant "can make an adjustment to other work," he is not disabled.[26] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," he is disabled and entitled to benefits.[27]

## ANALYSIS

Plaintiff presents two arguments on appeal. First, Plaintiff argues that the ALJ erred by failing to clarify inconsistent evidence. Second, Plaintiff contends that the ALJ erred by failing to address significantly probative evidence. The court addresses each of Plaintiff's arguments in turn below and concludes that both fail. Therefore, the court affirms the Commissioner's decision.

**I.      The ALJ Did Not Err by Failing to Clarify Inconsistent Evidence.**

Plaintiff asserts that the ALJ erred by failing to clarify inconsistencies in the opinions of Brent Egan, FNP ("Mr. Egan"). Mr. Egan, who was responsible for Plaintiff's pain management, provided multiple opinions in this case concerning Plaintiff's limitations,[28] including his opinion that Plaintiff would be absent from work one to two times per month and would have difficulty with early morning hours.[29] However, many of Mr. Egan's treatment notes indicated that Plaintiff's physical examinations were normal.[30] Recognizing this apparent inconsistency,

---

[25] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

[26] 20 C.F.R. § 404.1520(a)(4)(v).

[27] *Id.*

[28] *See, e.g.*, AR 543-668, 686-87.

[29] AR 664-65.

[30] *See, e.g.*, AR 543-668.

5

Plaintiff's counsel instructed Plaintiff to contact Mr. Egan to obtain an explanation. Mr. Egan then submitted a letter that included the following statement:

> I understand that Social Security used the relatively normal physical examinations in my treatment notes to deny benefits when [Plaintiff] initially applied for disability benefits. However, I do not perform physical examinations during most of our office visits. Our medical record system defaults to normal if not tested. His range of motion on exam today was extremely limited.[31]

In his assessment of Mr. Egan's opinions about Plaintiff's limitations, the ALJ found those opinions to be unpersuasive because Mr. Egan had recorded mostly normal physical evaluations and because they were inconsistent with opinions of certain consulting physicians, which the ALJ found persuasive.[32] Specifically, the ALJ stated:

> [Mr. Egan] then suggested that the normal physical examinations included in the record should not be the basis for finding [Plaintiff] able to work because the nurse does "not perform physical examinations during most of our office visits." . . . Essentially, Mr. Egan would have the undersigned disregard the medical record he created as inaccurate . . . and credit his statements of [Plaintiff]'s functions instead. However, if the record created by the nurse is not, according to him, accurate, then any statements would be of dubious reliability. The statements are also not consistent with the opinions of consulting physicians who reviewed [Plaintiff]'s record and who noted that [Plaintiff]'s records included likely inaccurate repetitions. . . . Mr. Egan's opinions are not persuasive.[33]

---

[31] AR 687.

[32] AR 21.

[33] *Id*.

Plaintiff contends that the ALJ was required to resolve any inconsistencies in Mr. Egan's opinions under 20 C.F.R. § 404.1520b(b), which governs how an ALJ addresses inconsistent evidence, including medical opinions. That regulation provides:

> In some situations, we may not be able to make our determination or decision because the evidence in your case record is insufficient or inconsistent. We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision. We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques. If the evidence in your case record is insufficient or inconsistent, we may need to take the additional actions in paragraphs (b)(1) through (4) of this section.[34]
>
>> (1) If any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have.
>>
>> (2) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.
>>
>>> (i) We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from

---

[34] Although the regulation specifies paragraphs (b)(1) through (b)(4), paragraph (b)(4) does not appear in the regulation.

> experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
>
> (ii) We may request additional existing evidence;
>
> (iii) We may ask you to undergo a consultative examination at our expense . . . ; or
>
> (iv) We may ask you or others for more information.
>
> (3) When there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based on the evidence we have.[35]

Plaintiff argues that the ALJ erred by failing to comply with paragraph (b)(2). Specifically, Plaintiff asserts that the ALJ's determination that Mr. Egan's opinions were inconsistent triggered a requirement for the ALJ to take one of the actions listed in paragraph (b)(2) to resolve any inconsistencies. For the following two reasons, Plaintiff's argument is without merit.

First, contrary to Plaintiff's contention, the regulation did not require the ALJ to take any of the actions in paragraph (b)(2) when faced with the inconsistencies in Mr. Egan's opinions. Where, as here, Plaintiff bases his argument on the textual construction of a regulation, the court must apply certain canons of construction. In interpreting regulations, the court applies "the same

---

[35] 20 C.F.R. § 404.1520b(b)(1)-(3).

rules used to interpret statutes."[36] Consequently, the court begins its "analysis by examining the plain language of the text of the regulation, giving the words their ordinary meaning."[37] Under the plain language of the regulation, even when there is inconsistent evidence, paragraph (b)(1) permits an ALJ to rely upon the other relevant evidence to determine whether a claimant is disabled.[38] That is precisely what the ALJ did here. After considering the record evidence related to Plaintiff's alleged limitations, the ALJ concluded that, despite the inconsistencies in Mr. Egan's opinions, Plaintiff was not disabled. Therefore, the ALJ did not err by failing to comply with the requirements of paragraph (b)(2).

Second, paragraph (b)(2) does not apply here, but even if the ALJ it did, that paragraph does not contain language that mandates compliance with its provisions. According to the plain language of paragraph (b)(2), an ALJ can rely on its provisions when: (1) the evidence is consistent but insufficient; or (2) if after considering all the evidence, the ALJ still cannot determine whether the claimant is disabled. The ALJ did not find that either provision applied to

---

[36] *Bd. of Educ. of Gallup-McKinley Cnty. Schs. v. Native Am. Disability L. Ctr., Inc.*, 959 F.3d 1011, 1013 (10th Cir. 2020).

[37] *Id.*

[38] 20 C.F.R. § 404.1520b(b)(1); *see also Boyle v. Berryhill*, No. 16-CV-0695-CVE-FHM, 2017 WL 4364203, at *4 (N.D. Okla. Oct. 2, 2017) (stating that an ALJ is not required to take any of the actions in paragraph (b)(2) "if the ALJ determines that the ALJ can make a finding as to the claimant's disability based on the evidence in the administrative record" under paragraph (b)(1)); *Gotcher v. Berryhill*, No. 15-CV-609-TLW, 2017 WL 1234147, at *7 (N.D. Okla. Mar. 31, 2017) (stating that "an ALJ need not even make an effort to resolve an inconsistency" under paragraph (b)(2) "if an ALJ can determine whether a plaintiff is disabled based on the existing evidence in a case" under paragraph (b)(1)).

the evidence in this case because there was evidence from other sources that made the disability determination possible here.

In any event, even if paragraph (b)(2) applied at all, the ALJ was not required to do anything to rectify whatever purported inconsistency that Plaintiff asserts existed here. Paragraph (b)(2)'s plain language provides that an ALJ "*may* not be able to make [his or her] determination or decision because the evidence in [the claimant's] case record is insufficient or inconsistent" and that an ALJ "*may* need to take the additional actions" described in subsequent paragraphs.[39] Additionally, paragraph (b)(2) provides similarly permissive language indicating that an ALJ "*may*" take certain actions.[40] The plain language interpretation of "may" is discretionary, not mandatory.[41] The context of paragraph (b)(2) clearly shows this because other sentences in that paragraph provide that the actions the Commissioner may take "will depend on" other factors and that the Commissioner "will try" to use certain measures to resolve the case.[42] Such language only strengthens the interpretation that "may" in paragraph (b)(2) is discretionary. Thus, even if paragraph (b)(2) were controlling here, the ALJ was not required to take any of the actions listed therein. He had discretion, and he appropriately used it to decide the case based on

---

[39] 20 C.F.R. § 404.1520b(b) (emphasis added).

[40] *Id*. § 404.1520b(b)(2)(i)-(iv) (emphasis added).

[41] *See, e.g.*, *United States v. Bowden*, 182 F.2d 251, 252 (10th Cir. 1950) ("The use of the word 'may' in a statute will be construed as permissive and to vest discretionary power, unless the context of the statute clearly indicates a purpose to use it in a mandatory sense.").

[42] 20 C.F.R. § 404.1520b(b)(2).

the evidence before him instead of relying on the actions that Plaintiff contends the ALJ should have taken. Therefore, Plaintiff's argument concerning paragraph (b)(2) fails.

## II. The ALJ Did Not Err by Failing to Address Significantly Probative Evidence.

Plaintiff argues that the ALJ erred by failing to address significantly probative evidence. Specifically, Plaintiff contends that the ALJ failed to address Plaintiff's work and absence summaries contained in the record.[43] According to Plaintiff, those work and absence summaries show that he was absent from work thirty-four times and late to work thirty-two times from November 2017 through August 2019. For the two reasons that follow, Plaintiff's argument fails.

First, because the work and absence summaries are nonmedical evidence, the ALJ was not required to articulate how he considered them. Under the regulation governing categories of evidence, there are five categories: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[44] Evidence from nonmedical sources is defined as: "any information or statement(s) from a nonmedical source (including [the claimant]) about any issue in [the claimant's] claim."[45] The regulation governing how an ALJ is required to consider and articulate medical opinions and prior administrative findings provides that and ALJ is not required to articulate how he or she considers evidence from nonmedical sources.[46] Here, the work and

---

[43] AR 297-326, 392-403.

[44] 20 C.F.R. § 404.1513(a)(1)-(5).

[45] *Id*. § 404.1513(a)(4).

[46] *Id*. § 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section."); *see also Kelli*

absence summaries fall under the category of evidence from a nonmedical source. Accordingly, the ALJ was not required to articulate how he considered them. He was required only to consider them. The ALJ stated at several points in his decision that he considered all the record evidence,[47] as he was required to do,[48] and this court "is to take a lower tribunal at its word when it declares that it has considered a matter."[49] Therefore, the ALJ did not err by failing to articulate how he considered the work and absence summaries.

     Second, even if the ALJ were required to articulate how he considered the work and absence summaries, the court would still conclude the ALJ did not err because the summaries were not significantly probative. On appeal, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."[50] "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence

---

*Lynne S-S., v. Kijakazi*, No. CV 20-1207-JWL, 2021 WL 4860562, at *9 (D. Kan. Oct. 19, 2021) (stating that 20 C.F.R. § 404.1520c(d) "explains that the [ALJ] is not required to articulate how [he or she] considered evidence from nonmedical sources"); *Nicholas P. S. v. Saul*, No. CV 20-2360-JWL, 2021 WL 2711172, at *4 (D. Kan. July 1, 2021) (same); *Terri Ann B. v. Saul*, No. CV 20-1077-JWL, 2020 WL 7316099, at *4 (D. Kan. Dec. 11, 2020) (same); *Tammi F. v. Saul*, No. CV 20-1079-JWL, 2020 WL 7122426, at *4 (D. Kan. Dec. 4, 2020) (same); *James M. v. Saul*, No. CV 20-4005-JWL, 2020 WL 6680386, at *4 (D. Kan. Nov. 12, 2020) (same); *Pamela W. v. Saul*, No. CV 19-1232-JWL, 2020 WL 4192342, at *4 (D. Kan. July 21, 2020) (same).

[47] AR 13-14, 18, 21.

[48] 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.").

[49] *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)

[50] *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

he rejects."[51] Here, the ALJ did not err by failing to discuss the work and absence summaries because they were not significantly probative of whether Plaintiff would be required to miss or be late to work *because* of his alleged impairments. The work and absence summaries are simply records of the days Plaintiff either missed or was late to work. They do not contain any explanation of why Plaintiff was absent or tardy. Notably, Plaintiff does not specifically argue that his absenteeism and tardiness were caused by his alleged impairments. Although Plaintiff asserts in a conclusory fashion that the work and absence summaries are "powerful evidence" that is "absolutely 'significantly probative evidence,'"[52] he also contends that "[i]*f* his medical and psychological impairments are causing him to be absent or tardy, the ALJ should have found Plaintiff disabled."[53] Without any connection between Plaintiff's impairments and the work and absence summaries, the court cannot say that they were significantly probative such that the ALJ committed reversible error by failing to discuss them.

But even if this court assumes that Plaintiff firmly stated that he was absent or tardy on every workday shown in the work and absence summaries due to his impairments, this does not help the ALJ answer the disability question. Besides determining whether Plaintiff's impairments "could reasonably be expected to produce [Plaintiff]'s pain or other symptoms,"[54] the ALJ must also determine whether Plaintiff's "statements concerning the intensity, persistence[,] and

---

[51] *Id*. at 1010.

[52] ECF No. 19 at 7.

[53] *Id*. at 6 (emphasis added).

[54] AR 18; *see also* 20 C.F.R. § 404.1529.

limiting effects of these symptoms" are consistent with "the medical evidence and other evidence in the record."[55] Plaintiff's work and absence summaries merely show that he did not work or was late to work; they do not explain why. And even if Plaintiff's testimony says that the absences or tardies reflected on those reports were because of his impairments, his testimony as to why he was absent from or was late to work is really the probative evidence, and, in this case, the ALJ reviewed Plaintiff's self-reported limitations—including their intensity and persistence—and found that they were not supported by the medical evidence.[56] The ALJ's finding is supported by substantial evidence. Therefore, the work and absence summaries, by themselves, are not probative as to why Plaintiff missed or was late to work, and the ALJ did not have to specifically discuss them.

## CONCLUSION AND ORDER

As demonstrated above, both of Plaintiff's arguments fail because ALJ did not err by failing to clarify the inconsistencies in Mr. Egan's opinions or by failing to address the work and absence summaries. Therefore, IT IS HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

DATED December 14, 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[55] *Id*. 20; *see also* 20 C.F.R. § 404.1529.

[56] *Id*. 18-22.